**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

DANIEL HICKEY,

                Petitioner,

                                 No. 03-CV-350
                                  (FJS/DRH)

JAMES CONWAY, Superintendent,
Attica Correctional Facility,

                Respondent.
_____

**APPEARANCES:**                    **OF COUNSEL:**

DANIEL HICKEY
Petitioner Pro Se
No. 98-B-2393
Gouverneur Correctional Facility
Post Office Box 480
Gouverneur, New York 13642-0370

HON. ELIOT SPITZER            ROBIN A. FORSHAW, ESQ.
Attorney General for the        Assistant Attorney General
  State of New York
Attorney for Respondent
120 Broadway
New York, New York 10271

**DAVID R. HOMER**
**U.S. MAGISTRATE JUDGE**

### REPORT-RECOMMENDATION AND ORDER[1]

    Petitioner pro se Daniel Hickey ("Hickey") is currently an inmate in the custody of the

_____

    [1]This matter was referred to the undersigned for report and recommendation pursuant to 28 U.S.C. § 636(b) and N.D.N.Y.L.R. 72.4.

New York State Department of Correctional Services (DOCS) at Gouverneur Correctional Facility. Hickey was found guilty on November 16, 1998 of conspiracy to possess cocaine in the second degree after a jury trial in Onondaga County Court and is presently serving an indeterminate term as a second felony offender of eight to sixteen years imprisonment. Hickey now seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254 on the grounds that (1) he was denied the effective assistance of appellate counsel; (2) the prosecution failed to meet the necessity requirement when applying for eavesdropping warrants; (3) the verdict was against the weight of the evidence; (4) the trial court erred in denying his request for a lesser included offense jury charge; (5) the trial court erred in denying his request for a missing witness jury charge; (6) the trial court erred in admitting audiotapes into evidence; and (7) he was deprived of the right to a fair and impartial trial by the intrusions of the trial court.  For the reasons which follow, it is recommended that the petition be denied.

## I. Background

Between November 1997 and June 1998, Hickey functioned as the middleman in a conspiracy with Elizabeth "Ma" Abear, Jose Hernandez, and Jeremy Fanelli to receive cocaine from Charles Williams and distribute it in upstate New York. In the process of this investigation, Detective William Walker, who testified at trial, obtained eavesdropping warrants to intercept a series of telephone calls between the members of the conspiracy, including Williams and Hickey. Thirty people involved in the conspiracy were arrested. T.

1435.[2]

The evidence adduced at trial established that on March 10, 1998, Hickey ordered ten ounces of cocaine over the telephone from Williams by asking Williams if he could do "ten." T. 1317, 1372. The telephone Hickey used to place the telephone call was listed to Abear, Hickey's mother. T. 1249, 1325. Williams then contacted his supplier by beeper entering "*280" to request 280 grams, or ten ounces, of cocaine. T. 1114, 1372. The following day, Hickey confirmed the order with Williams, set a time for delivery, and negotiated a price of $ 8500. T. 1372-74. A call to Williams from an unidentified male saying "you ready?" indicated that the delivery was to be completed. T. 1375. Visual surveillance was established outside Williams' house at 430 Elliot Street in Syracuse, New York. T. 836, 1231, 1254. Jose Hernandez was observed entering the Elliot Street house and exiting a short time later. T. 1254. Hernandez later called to warn Williams to "be careful," indicating that Hernandez had seen the police surveillance. T. 1376.

After Hickey called Williams to say "I'm all set," Williams drove from Elliot Street to 219 Delaware Street, Abear's residence, where police surveillance was set up and where he stayed approximately five minutes. T. 1211, 1254-55, 1266. After Williams left, he called "Hick" saying that the payment was a thousand dollars short. Williams then drove back to Delaware Street, went inside, and exited a short time later. T. 1211, 1266. After Williams left, a green Neon driven by Jeremy Fanelli left Delaware Avenue as well. T.1211-12. The police followed the Neon from Delaware Avenue and stopped it. T. 1255. The car was occupied by Timothy Golden and Hickey. T. 1256. A search resulted in the seizure of $10

---

[2] "T" followed by a number refers to the pages of a portion of the trial transcript filed by respondent with his answer. Docket No. 17.

worth of cocaine from Hickey's possession. T. 1314-15.

On March 21, 1998, a series of record telephone calls alerted police to another upcoming cocaine deal involving Williams and Hickey. T. 1287, 1378-81, 1387-94. Police surveillance outside Delaware Street revealed the green Neon driven by Fanelli arrive and Fanelli enter the residence. T. 1217, 1287-88. Williams pulled up moments later, went inside, and then drove away five minutes later. T.1219, 1261. Fanelli drove away twenty minutes after Williams. T. 1219. Police stopped the green Neon driven by Fanelli and searched the car. T. 1220, 1261-63, 1298-99. Windshield wiper fluid had been poured on the floor mats to dissolve cocaine, but a chemist still extracted thirty-two grams of cocaine from the floor mats. T. 1217, 1263, 1291, 1730-31. The following day, Hickey called Williams to alert him to the police activity. T. 1394-96.

On April 1, 1998, Hickey made another order for cocaine from Williams and agreed on "$800 an ounce." T. 1400-01. On April 4, 1998, Hickey ordered seven ounces from Williams and Williams then left a numeric message on his supplier's beeper ordering the cocaine using the code "*224." T. 1409. Bradley Addison returned the call and they agreed on a price of $775. Police surveillance saw Addison deliver the cocaine to Williams at Elliot Street and observed Williams drive to Delaware Street where he delivered the cocaine to Hickey, who had arrived at Delaware Street moments earlier. T. 1454.

Hickey was arrested, indicted, tried, found guilty, and sentenced as indicated above. The Appellate Division affirmed the conviction. People v. Hickey, 284 A.D.2d 907 (4th Dep't 2001). Application for leave to appeal to the New York Court of Appeals was denied on November 7, 2001. People v. Hickey, 97 N.Y.2d 57 (2001). This action followed.

## II. Discussion

### A. Ineffective Assistance of Appellate Counsel

Respondent contends that the Appellate Division adjudicated this claim on the merits and this decision was not contrary to or an unreasonable application of settled Supreme Court law. The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA), Pub. L. 104-132, 110 Stat. 1214, restricts review of habeas petitions. In order for a petitioner to be granted relief under the AEDPA, it is necessary to show that a claim adjudicated on the merits by a state court was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1); Aparicio v. Artuz, 269 F.3d 78, 93 (2d Cir. 2001). For the purposes of AEDPA, a claim is adjudicated on the merits if the court disposed of the claim on substantive grounds and reduced its disposition to judgment. Sellan v. Kuhlman, 261 F.3d 303, 312 (2d Cir. 2001). No explanation of the court's reasoning process is necessary. Id. An issue raised may be considered adjudicated "on the merits" for AEDPA purposes even when the state court did not specifically mention the claim but used general language referable to the merits. Id. at 312-14; Norde v. Keane, 294 F.3d 401, 410 (2d Cir. 2002).

Hickey's coram nobis motion alleged that his appellate counsel was ineffective for failing properly to raise certain issues to the Appellate Division. Forshaw Aff. (Docket No. 16) at Ex. E. The Appellate Division's decision indicates that the written submissions of both parties were considered in making a disposition and that this decision was reduced to judgment. Id. at Ex. H. Clearly, the decision was based on substantive and not procedural grounds. Therefore, because the Appellate Division adjudicated Hickey's ineffective

5

assistance of counsel claim on the merits, the deferential standard of § 2254 must be applied and the issue becomes whether the Appellate Division's decision was "contrary to, or  involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1); Aparicio, 269 F.3d at 93.

To establish ineffective assistance of appellate counsel, a petitioner must demonstrate that (i) appellate counsel's performance fell below an objective standard of professional reasonableness, and (ii) but for appellate counsel's "unprofessional errors," the results of the proceedings would have been different or that such error caused prejudice to the petitioner. Smith v. Robbins, 528 U.S. 259, 285-86 (2000); Strickland v. Washington, 466 U.S. 668, 688, 694 (1984). The Strickland standard satisfies the "clearly established Federal law" requirement of § 2254(d)(1). Mask v. McGinnis, 233 F.3d 132, 140 (2d Cir. 2000). When challenging the effectiveness of appellate counsel, a petitioner must show that counsel "omitted significant and obvious issues on appeal while pursuing issues that were clearly and significantly weaker." Clark v. Stinson, 214 F.3d 315, 322 (2d Cir. 2000) (quoting Mayo v. Henderson, 13 F.3d 528, 533 (2d Cir. 1994)). A petitioner asserting "constitutionally deficient performance" must show more than counsel's failure to raise a non-frivolous argument, as counsel is not required to use professional judgment when deciding to concentrate on a few key issues while eliminating weaker arguments. Jones v. Barnes, 463 U.S. 741, 751-52 (1983); Sellan, 261 F.3d at 317. Moreover, "the Sixth Amendment does not require that all colorable state law arguments be raised on direct appeal." Sellan, 261 F.3d at 310.

While Hickey desired to be an active participant in his appeal, counsel's failure to

6

present Hickey's suggested arguments and follow his requests to make motions do not rise

to the level of the ineffective assistance of appellate counsel. Counsel properly determined

which arguments had merit, presented seven issues on direct appeal, submitted a thirty

seven page brief to support these arguments, and in all respects properly represented

Hickey on appeal. See Forshaw Aff. at Ex. A.  Any contentions by Hickey that counsel failed

to present more compelling issues is without merit and fails to establish that his counsel's

performance fell below an objective standard. The appeal and brief were timely. Hickey

contends that  appellate counsel was ineffective for failing to raise a claim of ineffective

assistance of trial counsel, but Hickey fails to elaborate on how his trial counsel was

ineffective or make any further allegations on this issue. Hickey argues that his appellate

counsel failed to include the warrant applications as part of the record which prohibited

review of the warrants by the Appellate Division. However, Hickey could have raised this

issue in a motion to vacate judgement under N.Y. Crim. Proc. Law § 440.10(1)(f).[3]

Therefore, the Appellate Division did not make an unreasonable application of Strickland in

determining that Hickey received the effective assistance of appellate counsel.

    The petition on this ground should be denied.

---

[3] A motion to vacate judgment may be heard on the grounds that improper and prejudicial conduct not appearing in the record occurred during a trial resulting in the judgment which conduct, if it had appeared in the record, would have required a reversal of the judgment upon an appeal therefrom. N.Y. Crim. Proc. Law § 440.10(1)(f) (McKinney 2004).

## B. Evidentiary Issues

**1. Eavesdropping Warrants**

In ground two of this petition, Hickey alleges that the prosecution failed to comply with the necessity requirement of N.Y. Crim. Proc. Law § 700.15(4) when applying for eavesdropping warrants and that the evidence obtained from these warrants should have been suppressed. Respondent contends that this claim is not cognizable in this Court.

N.Y. Crim. Proc. Law § 700.15 (2) dictates when eavesdropping and video surveillance warrants may be issued. To issue a surveillance warrant, there must be a showing that normal investigative procedures have failed, are unlikely to succeed, or would be too dangerous to employ. This subsection is referred to as the "necessity" requirement and is required by federal law. Title III of the Omnibus Crime Control and Safe Streets Act, Pub. L .No. 90-351, Tit. III, § 802, 82 Stat. 212 nationalized standards for electronic surveillance, placed limits on the use of electronic surveillance, permitted states "to adopt more restrictive legislation, or no legislation at all, but not less restrictive legislation," and excluded evidence derived from conversations intercepted by unauthorized wiretapping. 18 U.S.C. § 2515; Cruz v. Alexander, 669 F.2d 872, 874 (2d Cir. 1982); United States v. Capra, 501 F.2d 267, 276 (2d Cir. 1974).

In order to prevail on a Fourth Amendment claim, a petitioner must show that there was a legitimate expectation of privacy and that the invasion of that privacy interest was unreasonable. Security & Law Enforcement Employees v. Carey, 737 F.2d 187, 190 (2d Cir. 1984). Electronic surveillance is a search and seizure within the meaning of the Fourth Amendment. Zagarino v. West, 422 F. Supp. 812 , 816 (E.D.N.Y. 1976). No habeas relief is

allowed on the ground that evidence obtained in an unconstitutional search and seizure was introduced at trial if the state provided an opportunity for full and fair litigation of the Fourth Amendment claim. Stone v. Powell, 428 U.S. 465, 481-82 (1976). Thus, "review of fourth amendment claims in a habeas petition would be undertaken in only one of two instances: (a) if the state has provided no corrective procedures at all to redress the alleged fourth amendment violation; or (b) if the state has provided a corrective mechanism, but the defendant was precluded from using that mechanism because of an unconscionable breakdown in the underlying process." Capellan v. Riley, 975 F.2d 67, 70 (2d Cir. 1991).

Several courts in this circuit have applied Stone to purported violations of wiretapping statutes and the suppression issues that follow. See Pou v. Keane, 977 F. Supp 577, 584 (N.D.N.Y. 1997) (Kahn, J.); Pobliner v. Fogg, 438 F. Supp. 890, 892 (S.D.N.Y. 1977); Zagarino, 422 F.Supp. at 812; accord Losinno v. Henderson, 420 F. Supp. 380 (S.D.N.Y. 1976) (state court conviction obtained in violation of § 2515 cognizable in a habeas corpus proceeding and not barred by Stone because this exclusionary rule was prescribed by Congress). Regardless, relief for violations of federal law are granted only if the violation rises to the level of a "fundamental defect which inherently results in a complete miscarriage of justice." Reed v. Farley, 512 U.S. 339, 348 (1994) (quoting Hill v. United States, 368 U.S. 424, 428 (1962)). Hickey fails to meet this burden.

Because Hickey's claim is based primarily on the trial court's failure to suppress this evidence due to a violation of state law, Stone applies and precludes review unless New York has failed to provide a corrective mechanism or that Hickey was precluded from using this mechanism. Here, New York provides for a Mapp hearing which is held to determine whether evidence should be suppressed because it was obtained through an illegal search

9

and seizure. See Mapp v. Ohio, 367 U.S. 643 (1961).

Hickey had a complete opportunity to litigate these issues in his pretrial motion to suppress. An opportunity to litigate "means only that the state must make available 'a statutory mechanism' for suppression of evidence tainted by an unlawful search or seizure." McPhail v. Warden, Attica Corr. Facility, 707 F.2d 67, 69 (2d Cir. 1983). New York has such a mechanism under N. Y. Crim. Proc. Law §§ 710.10-.70 (McKinney 1995). Here, Hickey was afforded and took advantage of this procedure. See Pet. at 3. Hickey was not precluded from using this mechanism as a result of an unconscionable breakdown in the underlying process and, regardless, New York's procedure for litigating Fourth Amendment claims has been held facially adequate. Gates v. Henderson, 568 F.2d 830, 837 n.4 (2d Cir. 1977).

In the alternative, respondent contends that Hickey is procedurally barred from raising this issue. A federal habeas court is precluded from reviewing a petition if the state court's rejection of the argument rests on "independent and adequate state grounds." Coleman v. Thompson, 501 U.S. 722, 736 (1991); Jones v. Stinson, 229 F.3d 112, 117 (2d Cir. 2000); see also subsection II(B)(2)(b).  This occurs when the last state court rendering a judgment in the case clearly and expressly held that its judgment rested on a state procedural bar.  Harris v. Reed, 489 U.S. 255, 262 (1989); Jones, 229 F.3d at 118. Here, the Appellate Division conclusively rested its decision on New York procedural law, stating that Hickey failed to include eavesdropping warrants in the record on appeal and that Hickey failed to present a sufficient factual record to enable review of this issue. Hickey, 284 A.D. 2d at 929. This qualifies as an independent and adequate state ground and precludes review. See Berdecia v. Lacy, No. 99 CIV. 11309(SAS), 2000 WL 1072306, *7

10

(S.D.N.Y. Aug. 2, 2000). Hickey fails to demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or that failure to consider the claim will result in a fundamental miscarriage of justice. Coleman, 501 U.S. at 750.

For both reasons, then, the petition on this ground should be denied.

### 2. Audiotapes

In ground six of his petition, Hickey contends that the trial court erred in admitting audiotape records of wiretapped conversations and also erred in providing transcripts of these audiotapes to the jury.

### a. Exhaustion

As a threshold matter, respondent contends that Hickey failed to exhaust this claim in state court. A habeas petitioner must exhaust all state court remedies before seeking federal habeas corpus relief. Duckworth v. Serrano, 454 U.S. 1, 3 (1981); Bossett v. Walker, 41 F.3d 825, 828 (2d Cir. 1994); 28 U.S.C. § 2254(b), (c). Exhaustion requires that the petitioner both "fairly present" his federal constitutional claims to the highest state court and utilize all available avenues of appellate review within the state before proceeding to federal court. Dorsey v. Kelly, 112 F.3d 50, 52 n.1 (2d Cir. 1997); Bossett, 41 F.3d at 828. Typically, therefore, exhaustion requires that those issues presented as grounds for habeas relief must first have been presented on direct appeal in state court.  See Dorsey v. Irvin, 56 F.3d 425, 426 (2d Cir. 1995); Torres v. Irvin, No. 97-Civ.-5038, 1998 WL 824527, at *6 (S.D.N.Y. Nov. 23, 1998).

> A petitioner may alert a state court to the constitutional nature of a claim without referring chapter and verse of the U.S. Constitution: (a) reliance on pertinent federal cases employing constitutional analysis, (b) reliance on state cases employing constitutional analysis in like fact situations, (c) assertion of the claim in terms so particular as to call to mind a specific right protected by the Constitution, and (d) allegation of a pattern of facts that is well within the mainstream of constitutional litigation.

Ramirez v. Attorney Gen. of New York, 280 F.3d 87, 94-95 (2d Cir. 2001); Daye v. Attorney Gen. of New York, 696 F.2d 186, 194 (2d Cir. 1982).  On direct appeal, Hickey argued that the trial court erred in denying his application for an audibility hearing and allowing the jury to read transcripts of the tape recordings. Hickey claimed that these evidentiary issues denied him a fair trial. While Hickey does not cite any federal constitutional law, the issues presented as to the admissibility of evidence call to mind a federal constitutional right. Therefore, Hickey has exhausted his state court remedies regarding this claim and respondent's argument here should be rejected.

### b. Procedural Bar

Respondent next contends that Hickey is procedurally barred from raising this issue because he failed to preserve his claim. A habeas court may not consider an issue of federal law on direct review from a judgment of a state court if that judgment rests "on a state-law ground that is both 'independent' of the merits of the federal claim and an 'adequate' basis for the court's decision." Harris, 489 U.S. at 260; see also Singh v. Kuhlmann, No. 94 Civ. 2213, 1995 WL 870113, at *12 (S.D.N.Y. Aug. 25, 1995). To determine whether federal review is barred, a court must ask whether the state court's opinion contains a " 'plain statement' that [its] decision rests upon adequate and

independent state grounds." <u>Harris</u>, 489 U.S. at 261; <u>Berdecia</u>, 2000 WL 1072306, at *7.

The Appellate Division found that Hickey did not preserve this issue for review because Hickey's first request for an audibility hearing was denied with leave to renew. Hickey did not renew this request and did not object to the introduction of the tapes at trial. <u>Hickey</u>, 284 A.D.2d at 908. Therefore, the Appellate Division conclusively rested its decision on New York procedural law, thus qualifying their finding as an independent and adequate state ground. <u>See</u> <u>Berdecia</u>, 2000 WL 1072306, at *7.

Two exceptions exist, however, which permit a review of a claim otherwise procedurally barred. First, review may occur if a petitioner "demonstrate[s] cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate[s] that failure to consider the claim will result in a fundamental miscarriage of justice." <u>Coleman</u>, 501 U.S. at 750; <u>Restrepo v. Kelly</u>, 178 F.3d 634, 638 (2d Cir. 1999). "Cause" requires a showing that "'some objective factor external to the defense impeded counsel's efforts to raise the claim in state court," <u>Levine v. Comm'r of Corr. Servs.</u>, 44 F.3d 121, 127 (2d Cir. 1995), or that the basis for a claim was not reasonably available to counsel. <u>Bossett</u>, 41 F.3d at 829. On the record here, Hickey cannot establish entitlement to this exception as he makes no showing that he was unable to raise this claim or that the basis for it was not available. Where, as here, no cause has been demonstrated, a court need not determine whether a petitioner suffered actual prejudice. <u>Stepney v. Lopes</u>, 760 F.2d 40, 45 (2d Cir. 1985).

Second, a procedural default may be excused if a petitioner demonstrates that the failure to consider the claim would result in a "fundamental miscarriage of justice," a standard which requires a petitioner to show that he is "actually innocent." <u>Lebron v. Mann</u>,

13

40 F.3d 561, 564 (2d Cir. 1994). On this record, Hickey fails to meet this heavy burden.

Therefore, the petition on this ground should be denied as procedurally barred.

### c. Merits

Federal habeas courts review state court evidentiary decisions only for consistency with due process. See Patterson v. New York, 432 U.S. 197, 202 (1977); see also Rosario v. Kuhlman, 839 F.2d 918, 924 (2d Cir. 1988). State court evidentiary rulings do not rise to the level of due process violations unless they "offend some principle of justice so rooted in the traditions and conscience of our people as to be ranked fundamental." Patterson, 432 U.S. at 202; Zarvela v. Artuz, 364 F.3d 415, 418 (2d Cir. 2004). The admission of a tape recording into evidence at trial is a matter solely within the trial court's discretion. United States v. Bryant, 480 F.2d 785, 790 (2d Cir. 1973). The mere fact that portions of a tape recording are inaudible does not require its exclusion "unless the unintelligible portions are so substantial as to render the recording as a whole untrustworthy." United States v. Tymes, No. 98-CR-491, 1999 WL 34971, at *6-7 (N.D.N.Y. Jan. 20, 1999) (McAvoy, J.) (quoting Bryant, 480 F.2d at 790).

The "power of the courts to exclude evidence through the application of evidentiary rules that serve the interest of fairness and reliability is well-settled." Wade v. Mantello, 333 F.3d 51, 58 (2d Cir. 2004). Juries may listen to an audiotape of a voice and determine who is speaking even though the voice has been authenticated only by a lay witness rather than an expert. Tyson v. Keane, 159 F.3d 732, 738 (2d Cir. 1998); Ricketts v. City of Hartford, 74 F.3d 1397, 1409-11 (2d Cir. 1996); United States v. Sliker, 751 F.2d 477, 496-500 (2d Cir. 1984).

14

Hickey alleges that the tapes should not have been admitted into evidence because he was not identified as the voice on the tapes, that he was denied an expert to contest the issue of the voice identification, and that he was denied a hearing on the matter. Walker testified that he recognized Hickey's voice from prior occasions. The conversations referred to an individual named "Hick," Hickey was familiar with the owner of the telephone, and Hickey was observed coming and going from the home from which the telephone calls were placed. Thus, there was a sufficient basis for the state court to admit the tapes into evidence and to  allow the jury to read the transcripts. In addition, the judge gave an instruction that Walker's testimony was opinion testimony and that the transcripts were to assist the jury and were not actual evidence. T. 839, 1049, 1098-99, 1111.  On the merits, then, Hickey's contention that the trial court erred in admitting the tapes and transcripts should be rejected.

In the alternative, therefore, the petition on this ground should be denied.


### C. Insufficient Evidence


A defendant who claims that the evidence was not sufficient to sustain a conviction bears a "very heavy burden." United States v. Pierce, 224 F.3d 158, 164 (2d Cir. 2000). The Second Circuit has maintained that the weight of the evidence and the credibility of the witnesses are determinations for the jury and are not grounds for reversal. See United States v. Vasquez, 267 F.3d 79, 91 (2d Cir. 2001); Maldonado v. Scully, 86 F.3d 32, 35 (2d Cir. 1996).  "[T]he critical inquiry on review of the sufficiency of the evidence. . . [is] to determine whether the record evidence could reasonably support a finding of guilt beyond a

reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 318 (1979). This inquiry asks the

court to determine if, "after viewing the evidence in the light most favorable to the

prosecution[,] . . . *any* rational trier of fact could have found the essential elements of the

crime beyond a reasonable doubt." Id. at 319, see also Fama v. Comm'r of Corr. Servs.,

235 F.3d 804, 810 (2d Cir. 2000).

When reviewing the sufficiency of evidence supporting a state conviction, "[a] federal

court must look to state law to determine the elements of the crime." Fama, 235 F.3d at

810. A person is guilty of conspiracy in the second degree when, with intent to commit a

class A felony, he or she agrees with one or more persons to engage in or cause such

crime. N.Y. Penal Law § 105.15 (McKinney 2004). The class A felony on which Hickey's

conviction was based was second degree criminal possession of cocaine. A person is guilty

of criminal possession of a controlled substance in the second degree when he or she

possesses cocaine in an aggregate weight of two ounces or more. N.Y. Penal Law § 220.18

(McKinney 2004).

There was sufficient evidence in the record to support Hickey's conviction. Detective

Walker, a police officer since 1982, testified that the transcripts were accurate

representations of the content of the recorded conversations. T. 1362-65, 1433. Walker

identified Williams and Hickey as the participants in the conversations. T.1363,1369.

Williams referred to Hickey as "Hick." T. 1363. Walker testified that the March 10, 1998

conversation discussed a purchase of 280 grams of cocaine and that a beeper message

"*280" represented this amount. T. 1372. After Hickey ordered the cocaine from Williams,

Williams contacted his supplier to order the same amount discussed by Hickey and

Williams. T. 1373. The following day, Hickey and Williams agreed on a price. T. 1374.

Walker testified that based on his training and experience, the recorded conversations concerned delivering, receiving, and distributing cocaine. T. 1371-81.

Police surveillance observed that the cocaine deals in the recorded telephone calls coincided with the arrivals and departures of those involved in the conspiracy. Cocaine was found in the green Neon that left Elliot Street moments after Williams and Hickey departed and were connected with their previous conversation. In addition, other members of the conspiracy were involved in the same arrangements. T. 1023-27. The jury could reasonably have concluded that there is no other reasonable explanation for the content of these telephone calls and the short time that each member of the conspiracy stayed at the house after arrival. Prior calls intercepted and the amount of cocaine recovered were consistent with the amounts discussed over the telephone with others in the conspiracy. T. 1130-32.

Thus, there was sufficient evidence of placing orders, confirming deliveries, and negotiating prices to establish Hickey's membership in the conspiracy. This evidence demonstrates that Hickey's conduct was consistent with his intent to commit the crimes of first and second degree criminal sale of a controlled substance, both class A felonies. In addition, the Appellate Division considered Hickey's arguments as to the sufficiency of the evidence and decided them on the merits, and this decision was not "contrary to, or involved an unreasonable application of, clearly established Federal Law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1); Hickey, 284 A.D.2d at 929.

For both reasons, therefore, the petition on this ground should be denied.

17

### D. Jury Instructions

### 1. Lesser Included Offense

In ground four of his petition, Hickey contends that the trial court erred in failing to include a lesser included offense charge in the jury instructions. Respondent contends that this claim is not reviewable by this court.

The Supreme Court has held that due process requires a trial court to submit jury instructions regarding lesser-included offenses in capital cases but has declined to consider whether such a requirement would apply in the non-capital context. Beck v. Alabama, 447 U.S. 625, 637-38 n.14 (1980); see also Gilmore v. Taylor, 508 U.S. 333, 361 (1993) (Blackmun, J., dissenting). The Second Circuit has not decided whether the failure to instruct a jury on lesser included offenses in non-capital cases is a constitutional issue that may be considered on a habeas petition. Knapp v. Leonardo, 46 F.3d 170, 179 (2d Cir. 1995) ; Miller v. Bennett, No. 98-CV-0661C, 2004 WL 1573874, at *12 (W.D.N.Y. May 22, 2004). Due process requires that a lesser included offense instruction be given only when the evidence warrants such an instruction. Hopper v. Evans, 456 U.S. 605, 611 (1982); Beck, 447 U.S. at 637-38.

Hickey's counsel requested the lesser included offense charges of fifth and sixth degree conspiracy based on factual issues as to the intent of the underlying crime. T. 2031-32. The underlying criminal conduct for conspiracy in the fifth degree is intent to commit a felony and the underlying criminal conduct for sixth degree conspiracy is intent to commit a crime. N.Y. Penal Law § § 105.00, 105.05 (McKinney 2004). Hickey argued that the intended crime underlying the conspiracy was not a class A felony but the crime of

possession in the sixth or seventh degree based on the fact that Hickey possessed $10 worth of cocaine.

There is no reasonable view of the evidence to support a finding that Hickey committed the lesser offenses but not the greater. The quantities involved, the number of telephone conversations, and the price involved all show Hickey intended to perform the class A felony. There is no evidence that shows Hickey intended to commit the lesser felony or crime. The object of the conspiracy was to distribute and possess more than two ounces of cocaine for redistribution. Because Hickey was found on one occasion with a lesser amount did not warrant a lesser included offense instruction. A lesser included jury charge is given if the evidence warrants it, not merely if there is an alternate view proposed by the defense. In addition, a jury charge in a state trial is a matter of state law. Absent a showing that alleged errors were such as to deprive defendant of a federal constitutional right, the charge is not reviewable on federal habeas corpus. Cupp v. Naughten, 414 U.S. 141, (1973); United States ex rel. Stanbridge v. Zelker, 514 F.2d 45, 50 (2d Cir. 1975). Hickey fails to make this showing.

For both reasons, then, the petition should be denied on this ground .

## 2. Missing Witness Charge

A missing witness jury charge instructs the jury that an unfavorable inference may be drawn from the failure of a party to call such a witness. Cheng v. Greiner, No. 02-CIV-4804 DC, 2003 WL 22801348, at *2 (S.D.N.Y. Nov. 25, 2003). "Whether a missing witness charge should be given lies in the sound discretion of the trial court." United States v. Torres, 845 F.2d 1165, 1170-71 (2d Cir. 1988); Reid v. Senkowski, 961 F.2d 374, 377 (2d

Cir. 1992). The New York standard for a missing witness charge is that the party requesting the charge must establish that an uncalled witness is knowledgeable about a material issue and would be expected to testify favorable to the party requesting the charge. People v. Gonzalez, 68 N.Y.2d 424, 428 (1986). To defeat the request, the opposing party must show that the testimony would be cumulative, the witness is not under their control, or the witness would not be expected to testify in the opposing party's favor. Rivera v. Duncan, No. 00 Civ 4293, 2001 WL 1580240, at *20 (S.D.N.Y. Dec. 11, 2001).

The court denied Hickey's request for a missing witness jury charge for Elizabeth Abear. T. 2047-48. Hickey does not show that Abear's whereabouts were unknown, that Abear was unable to come forward, or that Abear was under the control of the prosecution. There is no showing that Abear would have testified in favor of Hickey.  Abear did not agree to testify, had no plea agreement, was not under the control of the prosecution, and her recommended sentence did not require her testimony at trial. T. 2048-50. Thus, the trial court properly declined Hickey's requested instruction.  In addition, this missing witness charge raises an issue of state law that cannot justify federal habeas relief. Green v. McCray, No. 02-CIV-9332 (JSM), 2003 WL 21688238, at *2 (S.D.N.Y. July 18, 2003). Here, the trial court exercised its discretion in denying the request for the missing witness charge.

For both reasons, therefore, the petition on this ground should be denied.


### E. Due Process

Hickey contends that he was denied the right to a fair trial in violation of his due process rights when the court interposed its own answers to questions asked by the defense during cross-examination of the prosecution's witness. As a threshold matter,

respondent contends that Hickey failed to exhaust his state court remedies on this claim. As noted above, a habeas petitioner must exhaust all state court remedies before seeking federal habeas corpus relief. 28 U.S.C. § 2254(b), (c); Duckworth, 454 U.S. at 3;  Bossett, 41 F.3d at  828.  Exhaustion requires that those issues presented as grounds for habeas relief must first have been presented on direct appeal in state court.  See Dorsey v. Irvin, 56 F.3d 425, 426 (2d Cir. 1995); Torres v. Irvin, No. 97-Civ.-5038, 1998 WL 824527, at *6 (S.D.N.Y. Nov. 23, 1998). Hickey did not present this issue in his direct appeal but presented it in his coram nobis motion with his ineffective assistance of counsel claim. In addition, his claim was not presented in federal constitutional terms.  Thus, Hickey is now procedurally barred from raising it.

Respondent also contends that Hickey's claim fails on the merits. The Due Process Clause of the Fourteenth Amendment requires that state court proceedings comport with the "fundamental fairness essential to the very concept of justice." Lisenba v. California, 314 U.S. 219, 236 (1941); Dunnigan v. Keane, 137 F.3d 117, 125 (2d Cir. 1998). In order to prevail on an allegation of improper judicial intervention into a trial, a habeas petitioner must demonstrate that the trial judge engaged in conduct so "fundamentally unfair" that it violated the due process requirements of the United States Constitution. See Daye, 712 F.2d at 1570-71; Salahuddin v. Strack, No. 97-CV-5789, 1998 WL 812648, at *8 (E.D.N.Y. Aug. 12, 1998). A showing that the conduct was merely "undesirable" is not sufficient. See Daye, 712 F.2d at 1572; Frase v. McCray, No. 01-CV-1704, 2003 WL 57919, at *12 (N.D.N.Y. Jan. 8, 2003) (Sharpe, M.J.).

Judicial intervention into trial proceedings is not prohibited and is frequently necessary for the "orderly and efficient presentation of the evidence," to clarify ambiguities,

correct misstatements, or obtain information necessary to make rulings.  <u>Garcia v. Warden</u>, 613 F. Supp. 302, 307 (S.D.N.Y. 1985); <u>Peterson v. Scully</u>, No. 87-Civ-1597 (CSH), 1991 WL 135621, at *3 (S.D.N.Y. July 16, 1991). The risks involved with judicial intervention are that the jury may be "swayed from an independent discharge of their solemn responsibilities" and that the "trial will not be perceived . . . as a fair adjudication . . . presided over by a neutral magistrate." <u>Daye</u>, 712 F.2d at 1571-72. The number of questions asked is not determinative but should be assessed in addition to the level of intervention, the nature of the questioning, and in the context of the entire trial. <u>Id.</u> at 1572. The intervention must reach a "significant extent and be adverse to the defendant to a substantial degree" to be unconstitutional. <u>Id.</u> at 1572.

Hickey's allegations do not rise to the level of a constitutional violation. A review of the record demonstrates that the trial judge did not violate Hickey's due process rights. The trial judge only minimally questioned and intervened in the examination of Walker. The intervention was clearly to clarify issues, confirm questions and answers, assist the witness in answering questions, specify and paraphrase questions to be better understood by the witness, and interpret answers. The trial judge did not suggest any answers and did not voice an opinion as to the credibility of any witness. T. 1266, 71, 93, 1305-07, 1326,1330-31. Any questions as to the foundation of certain evidence is within the purview of the court and involves evidentiary matters. T. 1352.

For both reasons, then, the petition should be denied on this ground.

### III.  Conclusion

For the reasons stated above, it is hereby

**RECOMMENDED** that the petition for a writ of habeas corpus be **DENIED**.

Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW.**  Roldan v. Racette, 984 F.2d 85, 89 (2d Cir. 1993); Small v. Sec'y of Health & Human Servs. 892 F.2d 15 (2d Cir. 1989); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).


DATED:  January 13, 2005
        Albany, New York

*David R. Homer*
United States Magistrate Judge